UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| SAMUEL SHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:16-cv-00190-SEB-TAB |
| | ) | |
| CITY OF BEDFORD, INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

This cause is before the Court on Plaintiff's Motion for Preliminary Injunction [Docket No. 8], filed on November 3, 2016. Plaintiff Samuel Shaw seeks to have Defendant, the City of Bedford, Indiana ("the City"), enjoined from enforcing Sections II(III)(A)(2)(a), II(III)(A)(3), II(III)(A)(4), II(III)(A)(5), and II(III)(A)(6) of City Ordinance 34-2016 ("the Sign Ordinance"),[1] alleging that these provisions on their face violate the First Amendment to the United States Constitution. The Court conducted a hearing on May 17, 2017 at which both parties presented oral argument and submitted

---

[1] At the time the Complaint was filed in this case, City Ordinance 15-2016 (the City's former sign ordinance) was in effect and was the subject of Plaintiff's opening brief in support of his motion for injunctive relief. By the time the City filed its response in opposition to the instant motion, the ordinance had been amended and City Ordinance 34-2016 was in effect. Approximately one week before our hearing on this motion, the City passed City Ordinance 9-2017, which amended, *inter alia*, three provisions in City Ordinance 34-2016 that are no longer relevant to this litigation. With each iteration of the City's ordinance, Mr. Shaw's constitutional claims have been narrowed such that now only the five sections of the ordinance listed above are at issue. For purposes of this order, we refer to these sections by the designations provided in the parties' briefing on this motion.

1

exhibits and the City presented witness testimony. Having considered the witness testimony, counsel's arguments, and the parties' written submissions and evidence, we hereby <u>DENY</u> Plaintiff's motion for preliminary injunctive relief.

**Factual Background**

The provisions of the City's Sign Ordinance that are the subject of this litigation govern the manner in which signs may be displayed on residential property. Plaintiff challenges the Sign Ordinance's classification and regulation of the following three types of residential signs: (1) flags; (2) temporary signs; and (3) permanent signs. Section I of the Sign Ordinance defines a flag as "[a] sign made of fabric, bunting, or similar material, attached along one side to a single pole that is either freestanding or attached to a building." Permanent signs are defined by the ordinance as signs that are "permanently attached to the ground." A temporary sign is a sign that "is not permanently attached to the ground."

Each of these three sign types is regulated differently under the Sign Ordinance. In this litigation, Plaintiff challenges the Sign Ordinance's individual and cumulative square footage limits for each sign type, the height and setback requirements for residential signs set forth in the ordinance, and the ordinance's prohibition of permanent signs in residential districts, except for residential developments. Specifically, the Sign Ordinance restricts flags displayed at an individual residence to a combined surface area of 60 square feet, with a limit of 15 square feet per flag, while temporary signs are restricted to a combined surface area of 36 feet, with a limit of 6 square feet per sign. The Sign Ordinance prohibits permanent signs in residential districts, except at entrances

to residential developments. The allowable square footage of such permanent signs varies depending on the size of the residential development. For example, residential developments that are four acres or less are permitted to have permanent signs with a total combined square footage of no more than 32 square feet; developments between four and forty acres in area are permitted up to 48 square feet of signage; and developments of forty acres or more are allowed signs of a total square footage of up to 102 square feet. Finally, the Sign Ordinance provides that, if "ground-mounted," (which the ordinance defines as any sign that "extends from the ground, or has support which places the bottom of the sign less than two (2) feet from the ground"), the top of the sign cannot exceed 4 feet above the ground and must be located at least 10 feet away from any City right-of-way.

The preamble to the Sign Ordinance explains, in relevant part, the City's stated reasons for its sign regulations, including its desire to:

> Maintain high quality districts of all land uses, and attractive public and private facilities of all types … to eliminate any conflict between traffic control signs and other signs which would be hazardous to the safety of the motoring public or pedestrians; and to control the design and size of all signs so that their appearance will be aesthetically harmonious with an overall urban design for the area, in accordance with commonly accepted community planning and design practices, and the City's Comprehensive Plan.

*See* City Ordinance 34-2016, Second "Whereas" Claus.

Plaintiff owns property in a residential district in Bedford. He has for a number of years placed various signs on his property expressing his political and ideological views. Mr. Shaw's signs have a signature style, to wit, they typically are made of a sheet of

wood paneling that is painted white, bearing handwritten lettering in red paint. In September 2016, when Mr. Shaw last had his full complement of signs displayed on his property, he had approximately twelve signs of various heights and sizes ranging from four (4) square feet to thirty-two (32) square feet. Mr. Shaw removed all non-conforming signs from his property on September 23, 2016, in response to a letter from the City informing him that he was not in compliance with the City's residential sign regulations and was subject to a $300.00 per day fine.

On October 31, 2016, Mr. Shaw filed his Complaint in this action alleging that the City's sign ordinance then in effect contained content-based restrictions that violated the First Amendment. Since that time, the City's two rounds of amendments to its ordinance have narrowed Mr. Shaw's lawsuit to the current First Amendment challenge to the City's content-neutral time, place, and manner restrictions on residential signs.

## Legal Analysis

### I. Standard of Review

To obtain a preliminary injunction, the moving party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. of Health*, 699 F.3d 962, 972 (7th Cir. 2012). If the moving party fails to demonstrate any one of these three threshold requirements, the injunctive relief must be denied. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbot Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). However, if these threshold conditions

are met, the Court must then assess the balance of the harm – the harm to Plaintiffs if the injunction is not issued against the harm to Defendants if it is issued – and determine the effect of an injunction on the public interest. *Id.* "The more likely it is that [the moving party] will win its case on the merits, the less the balance of harms need weigh in its favor." *Id.* at 1100.

## II. Discussion

Courts examining ordinances under the First Amendment must first determine whether the restrictions are content-based or content-neutral. For purposes of this motion, Plaintiff concedes that the challenged provisions of the City's sign ordinance are content-neutral restrictions. Accordingly, these restrictions are constitutional if they are "narrowly tailored to achieve a significant governmental interest and leave open ample alternative channels of communication." *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 784 (7th Cir. 2011). The City's stated interests, to wit, aesthetics and traffic safety,[2] have consistently been recognized by courts as significant municipal interests in terms of sign regulation. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to

---

[2] The City's aesthetic and traffic safety concerns are adequately documented in the record. Aesthetics was one of the overarching concerns identified in the City's comprehensive plan and the City's witnesses, including the Mayor, testified that one issue that sign regulation is intended to address is visual clutter. The City also presented witnesses who testified regarding safety concerns associated with signage, particularly with regard to visibility issues. Other witnesses called by the City pointed to Mr. Shaw's residence as one example of these concerns, testifying that his property was not only visually unappealing, due to the sheer number and size of the signs displayed, but also a traffic hazard because motorists would frequently slow down or even stop in the middle of the road to read his array of signs.

5

further—traffic safety and the appearance of the city—are substantial governmental goals. It is far too late to contend otherwise with respect to either traffic safety or esthetics."); *see also Reed v. Town of Gilbert, Ariz.*, 135 S.Ct. 2218, 2232 (2015) (recognizing that content-neutral regulations may be used by municipalities to "resolve problems with safety and aesthetics" associated with signs). We find no reason to deviate from this well-established precedent in this case.[3]

Having found the City's interests in aesthetics and traffic safety to be substantial municipal interests, we turn to address whether the City has narrowly tailored its regulations to further those interests. The narrowly tailored requirement is "satisfied 'so long as the … regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 798-99 (1989) (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). Here, we are persuaded that a sufficient showing has been made even at this early stage of the litigation that the City's interests in aesthetics and traffic safety are achieved more effectively with the Sign Ordinance's size, height, setback, and attachment-method regulations than without those restrictions.

---

[3] Plaintiff argues that "it is doubtful" that the City's interest in aesthetics is "significant" in the context of residential signs since property owners have a strong incentive to self-regulate, given their personal interest in, for example, protecting the value of their property. Pl.'s Reply at 11. However, while it is true that the Supreme Court has recognized that in many cases "private property owners' esthetic concerns will keep the posting of signs on their property within reasonable bounds," *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 811 (1984), Plaintiff has not cited nor have we found any case that stands for the proposition that aesthetics is not a significant municipal interest in the context of residential sign regulation.

Mr. Shaw takes issue both with the ordinance's exception to the ban on permanent residential signs for those signs displayed at the entrances of residential developments as well as the fact that the ordinance in his view regulates flags more strictly than temporary signs. It is true that an ordinance's exceptions may "diminish the credibility of the government's rationale for restricting speech in the first place," *City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994), but we are not persuaded that that is the case here.

To satisfy the narrowly tailored requirement, there need not be a "perfect" fit between "the legislature's ends and the means chosen to accomplish those ends." *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989). Here, the City has determined that limiting the display of permanently-affixed signs in residential areas solely to the entrances of residential developments and permitting flags to be slightly larger and exempt from the ordinance's height and setback requirements because of the unique manner in which flags are displayed promotes its interests in traffic safety and aesthetics. The City is permitted to make such subjective determinations to further its interests so long as it does not impair "substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799. In our view, the Sign Ordinance is reasonably tailored to accomplish the City's stated interests without burdening substantially more speech than is required,[4] particularly considering that courts

---

[4] Mr. Shaw argues that the Sign Ordinance's regulations prohibit him from posting more than six temporary signs on his property and therefore restrict him from expressing his views on more than six political candidates at a time. This is a mischaracterization of the ordinance's restrictions, however. It is true that, because of the total square footage limit, Mr. Shaw can post no more than six temporary signs on his property if each individual sign is 6 square feet (the maximum size allowed under the ordinance). The Sign Ordinance does not, however, impose a

7

are "loath to second-guess [the government's] judgment to that effect." *Fox*, 492 U.S. at 478.

The City's regulations also leave open ample channels of communication for Bedford residents (including Mr. Shaw) to express their views through signs posted on their own property. The Sign Ordinance does not ban altogether the posting of residential signs by Bedford residents nor does it impose a limit regarding the length of time such signs can continue to be displayed. Accordingly, the regulations at issue here are distinguishable from the ban on residential signs struck down in *City of Ladue v. Gilleo*, 512 U.S. 43 (1994), where the Supreme Court recognized that residential signs "have long been an important and distinct medium of expression," finding that a municipal ban on displaying them left no "adequate substitutes" for that "important medium of speech." *Id.* at 55-56. Here, in contrast, residential property owners remain free to express whatever views they wish, whenever they wish, and for as long as they wish,[5] by posting as many temporary signs and flags that conform to the Sign Ordinance's respective size and height limitations on their property as they desire, until the total square footage limit is reached. Mr. Shaw has put forth no argument to the contrary.

---

six-sign limit, only a limit on the total square footage of signage allowed. Therefore, if Mr. Shaw were to seek to express his views about more than six political candidates by posting signs on his property, he could do so simply by making each sign slightly smaller.

[5] Although the Sign Ordinance permits owners of individual residential properties to display only "temporary signs" and not "permanent signs," the ordinance defines these sign types not with reference to the length of time the sign is permitted to be displayed but rather with regard to whether it is permanently affixed to the ground. Accordingly, the Sign Ordinance does not subject the display of temporary signs to any specific time limit.

For these reasons, we hold that Plaintiff has failed to demonstrate a likelihood of success on the merits with regard to his First Amendment challenge to the Sign Ordinance. Thus, we shall forego an analysis of issues relating to balancing the parties' respective interests. *See Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015) (recognizing that "*if* the movant makes the *required* threshold showing, *then* the court proceeds to the second phase" where it balances the "potential harms" to the parties and determines whether the granting or denying of injunctive relief is in the public interest) (emphasis added). Plaintiff's Motion for Preliminary Injunction is therefore <u>DENIED</u>.

IT IS SO ORDERED.

Date: 7/06/2017

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Jan P. Mensz
ACLU OF INDIANA
jmensz@aclu-in.org

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Fishers)
lroberts@cchalaw.com